UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DEANDRE MARTEZ GRAHAM,

    Defendant.
_____/

Case No. 2:23-cr-20588

Honorable Susan K. DeClercq
United States District Judge

**ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE REVERSE 404(b) EVIDENCE (ECF No. 56)**

Deandre Graham is charged with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). The charge stems from a shooting on May 25, 2023, in which Graham was allegedly involved. The Government says that Graham opened fire on Eric Mitchell-Rodgers and Mitchell-Rodgers's girlfriend, R.M., after an argument over childcare. R.M. was hit multiple times and seriously injured.

To support his defense at trial, Graham seeks to introduce evidence related to two other events: (1) a shooting that happened six weeks later in July 2023, in which the same gun from the May 2023 shooting was apparently used; and (2) a shooting that happened in October 2020 that involved Mitchell-Rodgers. The Government now moves to exclude evidence relating to both incidents. As explained below, the

Government's motion will be granted as to the October 2020 shooting and denied as to the July 2023 shooting.

## I. BACKGROUND

### A. May 2023 Shooting

Around 8:00 a.m. on May 25, 2023, Graham and Mitchell-Rodgers—who both have children with the same woman, Janasia Payne—were allegedly arguing over childcare issues at Payne's house on Morang Drive in Detroit. ECF No. 56 at PageID.283. Mitchell-Rodgers then left to take one of his children to school, but he and Graham continued to argue over the phone. *Id.* About an hour later, Mitchell-Rodgers returned to the Morang Drive house. *Id.* His then-girlfriend, R.M., was seated alongside him in the front passenger seat of his Jeep Cherokee. *Id.* As they pulled up to the curb, Graham allegedly stepped from the house's front porch toward them, pulled a gun, and started shooting at the Jeep. *Id.* The bullets struck the Jeep's passenger side doors, mirror, and frame, and hit R.M. multiple times on her right side (i.e., the side of her body closest to the curb). *Id.* From the Jeep's driver's seat, Mitchell-Rodgers shot back at Graham through the open passenger-side window. *Id.* Mitchell-Rodgers then drove R.M. to the hospital. Police responded minutes later, but Graham was not there. *Id.* Police found three fired 9 mm shell casings on the sidewalk. *Id.*

In connection with this shooting, on October 17, 2023, Graham was indicted with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. An arrest warrant issued the same day. ECF No. 2. On May 9, 2024, Graham was released on bond pending trial.

Now, to support his defense at trial, Graham seeks to introduce evidence related to two other shootings—one of which occurred in July 2023 and the other in October 2020. The relevant facts are recounted below.

### B. July 2023 Shooting

Six weeks after the charged shooting in this case, Detroit police were dispatched to Evergreen Road, where a homeowner reported that people had shot up his house on July 4, 2023. *Id.* at PageID.284–85. Among other evidence, police recovered 18 shell casings that were 9 mm in size. *Id.*

The Government agreed to send those 18 shell casings to the Michigan State Police (MSP) Laboratory for comparison. *Id.* The lab's forensic report concluded that ten of the shell casings from the July 4, 2023, shooting were fired out of the same gun as one of the shell casings recovered from the May 25, 2023, shooting. *Id.*; *see also* ECF No. 47-3.

Of note, on July 4, 2023, Graham was incarcerated, so the parties agree that he could not have committed that shooting. ECF No. 56 at PageID.285; ECF No. 57 at PageID.301. The parties also agree that Mitchell-Rodgers could not have

committed the July 2023 shooting either. ECF No. 56 at PageID.287; ECF No. 57 at PageID.301.

### C. October 2020 Shooting

Graham also provides a police report of an October 2020 shooting, for which Mitchell-Rodgers was a suspect. ECF No. 47-4. According to the report, on October 23, 2020, officers responded to a dispatch for shots fired in a business's parking lot. *Id.* at PageID.223. Janasia Payne, Mitchell-Rodgers's ex-girlfriend, was there that day and later gave an interview to the police. *Id.* at PageID.224–25. She recounted that she had met Mitchell-Rodgers to do a child-custody exchange when the two of them began to argue. *Id.* Janasia's boyfriend also started to argue with Mitchell-Rodgers as Mitchell-Rodgers drove his car to the other side of the parking lot. *Id.* at PageID.225. As Janasia walked back to her car, she heard gunshots. *Id.* She did not see Mitchell-Rodgers shoot a gun. *Id.* Surveillance video depicted the custody exchange and the arguments, but it did not capture a shooting because of a glitch in the video. *Id.* at PageID.223–24. Witnesses to the shooting did not identify Mitchell-Rodgers as the shooter by name, *id.* at PageID.228, nor is there forensic evidence tying Mitchell-Rodgers to the shell casings found at the scene.

### II. STANDARD OF REVIEW

"A 'motion *in limine*' is any motion 'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Good v. BioLife Plasma Servs.,*

*L.P.*, 605 F. Supp. 3d 947, 955(E.D. Mich. 2022), *reconsideration denied*, 647 F. Supp. 3d 555 (E.D. Mich. 2022) (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)). Motions in *limine* are designed "to narrow the issues remaining" and "minimize disruptions," *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999), and to help ensure "evenhanded and expeditious management of trials," *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017) (citations omitted). Indeed, "the Supreme Court has authorized district courts to rule on motions *in limine* 'pursuant to the district court's inherent authority to manage the course of trials.'" *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 n.4).

A district court should grant a motion *in limine* to exclude evidence "only when [that] evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). "In cases where that high standard is not met, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (cleaned up) (quoting *Ind. Ins. Co.*, 326 F. Supp. 2d at 846); *see also Good*, 605 F. Supp. 3d at 955; *Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007) ("It may be desirable in many cases to defer ruling . . . until trial.").

Even when a court denies a motion *in limine*, that "does not necessarily mean

that the court will admit the evidence at trial." *Phillips*, 146 F. Supp. 3d at 841.Rather, "[d]enial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

### III. DISCUSSION

### A. July 2023 Shooting

Graham seeks to introduce the MSP's forensic report into evidence, which effectively concludes that the same gun was used during the July 2023 and May 2023 shootings. ECF No. 47-3. According to Graham, such evidence is exculpatory. ECF No. 57. As the argument goes, because Graham was not there during the July 2023 shooting, he indisputably did not possess the gun then. *Id.* at PageID. 301–02. And if he did not possess the gun then, then it makes it more likely that he also did not possess that same gun in May 2023. *Id.*

The Government, however, argues that this evidence is irrelevant, or that it is substantially more prejudicial than probative under Rule 403, given that it would confuse the issues or mislead the jury. ECF No. 56. Effectively, the Government seeks to prevent Graham from pointing the finger at an alternative perpetrator for

the May 2023 shooting—whether that be Mitchell-Rodgers[1] or some other unidentified person.[2]

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." FED R. EVID. 401. As the Sixth Circuit has recognized, Rule 401 sets quite a "low bar" for relevance. *United States v. Lang*, 717 F. App'x 523, 539 (6th Cir. 2017).

Here, evidence of the July 2023 shooting is relevant. That someone else possessed the gun in July 2023 may make it less probable that Graham possessed the gun (and, by extension, the ammunition inside of it) in May 2023. To be sure, the evidence's probative value is low. It is not the soundest logical leap ever thought up, and it may run headfirst into other evidence—like the victim's testimony that

---

[1] The Government dedicates a good portion of its briefing to arguing that Graham cannot point the finger specifically at Mitchell-Rodgers for the July 2023 shooting. ECF No. 56 at PageID.287–92 But Graham concedes that Mitchell-Rodgers could not have been not present at that shooting. ECF No. 57 at PageID.301. Thus, the Government's arguments as to Mitchell-Rodgers with respect to July 2023 are moot.

[2] The Government also argues that Graham cannot pin the blame for the May 2023 and July 2023 shootings on an unidentified third-party perpetrator. The Government argues that any such evidence must be excluded because Graham has not provided "nexus" connecting a third party to either crime. *See Miller v. Brunsman*, 599 F.3d 517, 526 (6th Cir. 2010) (recognizing that evidence "may be excluded" when there is no "nexus"—that is, "where [the evidence] does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." (quoting *Holmes v. South Carolina*, 547 U.S. 319, 327 (2006))). However, at this juncture, a third-party perpetrator analysis is premature because currently, Graham does not appear to be pointing the finger at any such perpetrator. Should that change in the future, the Government may re-raise this argument.

Graham was the one who shot at her. But the evidence's potential weakness is no reason to exclude it. *See United States v. Sumlin*, 956 F.3d 879, 888 (6th Cir. 2020) ("[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth."). However slight, the evidence could cast doubt on Graham's involvement in the May 2023 shooting, which makes it relevant.

Nor is the evidence's probative value substantially outweighed by any unfairly prejudicial effect. The Government argues that the forensic evidence would only serve to confuse the jury members, who "would be left wondering why they heard about a shooting where no one involved in, tied to, or associated with the charged offense was even present. . . ." ECF No. 56 at PageID.291–92. But this overlooks the fact that the two shootings are linked—even if only very slightly—by the use of the same gun. That fact would contextualize for the jury why it was hearing about the July 2023 shooting. And in any event, an appropriate limiting instruction may suffice to "cure" any risk of prejudice. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Accordingly, with respect to the July 2023 shooting, the Government's motion will be denied without prejudice.

## B. October 2020 Shooting

Graham also seeks to introduce evidence of the October 2020 shooting, for which Mitchell-Rodgers was a suspect. The Government objects that admitting evidence of this prior act violates Rule 404(b).

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b). Courts generally refer to this kind of proof as "other acts" evidence or "extrinsic" evidence. *Huddleston v. United States*, 485 U.S. 681, 685–86 (1988). But "other-acts evidence can be admitted for different purposes—such as to prove a defendant's 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Lester*, 98 F.4th 768, 776 (6th Cir. 2024) (quoting FED R. EVID. 404(b)(2)).

Here, the Government seeks to exclude from trial what the Sixth Circuit has labeled "reverse 404(b) evidence." *United States v. Daneshvar*, 925 F.3d 766, 779 (6th Cir. 2019). Reverse 404(b) evidence is "evidence of a prior act by another [that] is offered as exculpatory evidence by the defendant, instead of being used by a prosecutor against a defendant." *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004) (citing *United States v. Hill*, 322 F.3d 301, 308 (4th Cir. 2003)). Because "Rule 404(b) applies to any person," reverse 404(b) evidence is subject to the same

"strictures and analysis" as Rule 404(b) evidence offered by the Government. *United States v. Robinson*, 272 F. App'x 421, 430 (6th Cir. 2007) (citing *Lucas*, 357 F.3d at 605–06).

To admit such evidence under Rule 404(b), the court must determine (1) whether there is sufficient evidence that the other act in question actually occurred, (2) whether the evidence of the other act is admissible for a legitimate purpose—that is, whether it is probative of a material issue other than character, and (3) whether the evidence's probative value is substantially outweighed by its potential unfairly prejudicial effect. *United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir. 1996) (citing *United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir. 1994)).

Here, even assuming that there is enough evidence to support a finding that the 2020 shooting actually occurred, Graham's argument falters on the last two prongs.

As to whether the evidence is probative of a material issue other than character, Graham argues that evidence of Mitchell-Rodgers's involvement in the October 2020 shooting will "assist [the jury] with understanding the motive, modus operandi, and identity of the shooter." ECF No. 41 at PageID.184. But it is unclear how Mitchell-Rodgers's motive, identity, or *modus operandi* are material issues in the case.

Consider *modus operandi*, which is a method of proving identity. *See United States v. Joseph*, 270 F. App'x 399, 406 (6th Cir. 2008) ("*Modus operandi* provides a proper ground for admission when identity is at issue."). To qualify as *modus operandi* evidence, the prior crime and the charged offense need not be "identical in every detail." *Id.* (quoting *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006), *cert. denied*, 547 U.S. 1139 (2006)). But the similarity between them "must be striking, and the method must amount to a 'signature.'" *Id.*

Here, however, *modus operandi* evidence is pointless because Mitchell-Rodgers's identity is not at issue. In fact, both parties agree that Mitchell-Rodgers was present and shot a gun during the May 2023 incident. Indeed, the victim, R.M., is expected to testify to that fact. ECF No. 56 at PageID.288. And to the extent that Graham argues that the October 2020 shooting helps prove Mitchell-Rodgers's identity as the person who shot the 9 mm ammunition found on the sidewalk that day in May 2023, the October 2020 shooting does nothing to help establish that fact. True enough, both shootings involved the use of a 9 mm handgun, and supposedly involved arguments over childcare, but that does not make the similarity between them so striking as to qualify as *modus operandi* evidence.

As for motive, Graham's argument fares little better. Graham argues that the October 2020 shooting shows that Mitchell-Rodgers resorts to gun violence to resolve disputes about his children. But Graham does not explain how or why that is

material to an issue in this case. Indeed, Mitchell-Rodgers's motive for firing shots on May 25, 2023, does not relate to whether Graham also fired shots that left 9 mm casings on the sidewalk.

Finally, the third prong—whether Mitchell-Rodgers's prior bad act is substantially more prejudicial than probative under Rule 403—also supports excluding the evidence. The probative value of the October 2020 shooting is low at best. Graham does not explain how a shooting by someone else in 2020 bears on whether Graham possessed ammunition in 2023. Further, the potential for unfair prejudice is high. Such evidence may prompt the jury to focus on whether Mitchell-Rodgers is a bad person who should have also been charged, rather than whether Graham possessed ammunition.

Graham responds that he needs this evidence to present a meaningful defense, which significantly outweighs any potential prejudice to the Government's case. ECF No. 41 at PageID.184; *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (recognizing that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (cleaned up) (quoting *California v. Trobetta*, 467 U.S. 479, 485 (1984)). However, "a complete defense does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence." *Lucas*, 357 F.3d at 606 (citing *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc)). This argument is thus unavailing.

In short, evidence of the October 2020 shooting will be excluded under Rule 404(b).

## IV. CONCLUSION

Accordingly, it is **ORDERED** that the Government's Motion *in Limine*, ECF No. 56, is **GRANTED IN PART AND DENIED IN PART**. It is granted in part to the extent that evidence regarding the October 2020 shooting will be excluded at trial. It is denied in part without prejudice with respect to the forensic report regarding the July 2023 shooting.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: June 17, 2025