UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                      Case No. 2:23-cr-20588

v.                                  Honorable Susan K. DeClercq
                                  United States District Judge

DEANDRE MARTEZ GRAHAM,

              Defendant.

_____/

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION *IN LIMINE* REGARDING WITNESS BIAS (ECF No. 66)**

Deandre Graham is charged with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). The charge stems from a shooting in which Graham was allegedly involved. The Government says that on May 25, 2023, Graham opened fire on Eric Mitchell-Rodgers and Mitchell-Rodgers's girlfriend, R.M., after an argument over childcare. R.M. was hit multiple times and seriously injured.

At trial, the Government expects to call R.M. but not Mitchell-Rodgers to testify. Even so, Graham seeks to cross-examine R.M. about two facts: (1) Mitchell-Rodgers's prior felony conviction and (2) the fact that Mitchell-Rodgers was initially charged in state court in connection with this shooting. ECF No. 66. According to

Graham, this line of questioning is "relevant to demonstrate R.M.'s bias, motive to shift blame, and lack of credibility." *Id.* at PageID.355.

As explained below, Graham's motion will be denied.

## I. BACKGROUND

### A. May 2023 Shooting

Around 8:00 a.m. on May 25, 2023, Graham and Mitchell-Rodgers—who both have children with the same woman, Janasia Payne—were allegedly arguing over childcare issues at Payne's house on Morang Drive in Detroit. ECF No. 56 at PageID.283. Mitchell-Rodgers then left to take one of his children to school, but he and Graham continued to argue over the phone. *Id.* About an hour later, Mitchell-Rodgers returned to the Morang Drive house. *Id.* His then-girlfriend, R.M., was seated alongside him in the front passenger seat of his Jeep Cherokee. *Id.* As they pulled up to the curb, Graham allegedly stepped from the house's front porch toward them, pulled a gun, and started shooting at the Jeep. *Id.* The bullets struck the Jeep's passenger side doors, mirror, and frame, and hit R.M. multiple times on her right side (i.e., the side of her body closest to the curb). *Id.* From the Jeep's driver's seat, Mitchell-Rodgers shot back at Graham through the open passenger-side window. *Id.* Mitchell-Rodgers then drove R.M. to the hospital. Police responded minutes later, but Graham was not there. *Id.* Police found three fired 9 mm shell casings on the sidewalk. *Id.*

In connection with this shooting, on October 17, 2023, Graham was indicted with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. An arrest warrant issued the same day. ECF No. 2. On May 9, 2024, Graham was released on bond pending trial.

### B. R.M.'s Prior Statements Regarding May 2023 Shooting

Since the day of the shooting, R.M. has consistently given statements suggesting that Graham shot towards her and Mitchell-Rodgers, and that Mitchell-Rodgers had a gun and shot back at Graham.

First, on the day of the shooting, R.M. told the police officer who interviewed her at the hospital that Mitchell-Rodgers had a firearm, that Graham shot first, and that Mitchell-Rodgers shot back:

Q: Did [Mitchell-Rodgers] have a gun?

A: Yes

Q: Did [Mitchell-Rodgers] shoot the gun at any point?

A: Yes, but [Graham] shot first.

ECF No. 71-2 at PageID.402.

Second, on September 14, 2023, R.M. testified under oath at Graham's parole-violation hearing. ECF No. 71-3. In response to the question of whether Mitchell-Rodgers had a firearm, R.M. testified that it was her understanding that Mitchell-

- 3 -

Rodgers had a firearm, and that although she did not see him with the firearm or see him fire the shots, "it got louder." *Id*.

Third, R.M. testified before a federal grand jury on September 21, 2023. She testified again that although she did not see Mitchell-Rodgers with a firearm, she heard more noise and gunshots, which got louder, and it was her impression that Mitchell-Rodgers returned fire. ECF No. 72 (sealed).

The government anticipates that R.M. will testify at trial, consistent with her prior statements, that Mitchell-Rodgers shot back at Graham. ECF No. 71 at PageID.391.

### C. Mitchell-Rodgers's State Charges and Prior Felony

Initially, both Graham and Mitchell-Rodgers were both charged in Michigan state court in connection with the shooting. Specifically, in June 2023, Mitchell-Rodgers was charged in 36th District Court in Wayne County, Michigan, in Case No. 2305723601, with discharge of a weapon from a vehicle, felon in possession of a firearm, and two counts of weapons felony firearm. All of the charges later were dismissed.

In 2017, Mitchell-Rodgers was convicted of carrying a concealed weapon, a felony offense.

## II. LEGAL STANDARDS

### A. Motion *in Limine*

"A 'motion *in limine*' is any motion 'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Good v. BioLife Plasma Servs., L.P.*, 605 F. Supp. 3d 947, 955 (E.D. Mich. 2022), *reconsideration denied*, 647 F. Supp. 3d 555 (E.D. Mich. 2022) (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)). Motions *in limine* are designed "to narrow the issues remaining" and "minimize disruptions," *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999), and to help ensure "evenhanded and expeditious management of trials," *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017) (citations omitted). Indeed, "the Supreme Court has authorized district courts to rule on motions *in limine* 'pursuant to the district court's inherent authority to manage the course of trials.'" *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 n.4).

A district court should grant a motion *in limine* to exclude evidence "only when [that] evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). "In cases where that high standard is not met, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (cleaned up) (quoting *Ind. Ins. Co.*, 326 F. Supp. 2d

at 846); *see also Good*, 605 F. Supp. 3d at 955; *Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc*., 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007) ("It may be desirable in many cases to defer ruling . . . until trial.").

Even when a court denies a motion *in limine*, that "does not necessarily mean that the court will admit the evidence at trial." *Phillips*, 146 F. Supp. 3d at 841. Rather, "[d]enial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

## B. Confrontation and Bias Evidence

"The Confrontation Clause protects a defendant's right to cross-examine the witnesses against him." *United States v. Martin*, 526 F. App'x 643, 646 (6th Cir. 2013). "However, trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Indeed, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

During cross-examination, parties may attempt to "reveal possible biases,

prejudices, or ulterior motives of the witness" as relevant to the case at hand. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). As the Supreme Court has explained:

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*United States v. Abel*, 469 U.S. 45, 52 (1984).

## III. DISCUSSION

Graham seeks to cross-examine R.M. about, among other things, (1) R.M.'s romantic relationship with Mitchell-Rodgers, (2) Mitchell-Rodgers's possession of a gun during the incident, (3) Mitchell-Rodgers's status as a convicted felon at the time he possessed the gun during the incident, and (4) R.M.'s potential motive to protect Mitchell-Rodgers from state and federal prosecution, including as related to the previously dismissed state charges. ECF No. 66 at PageID.356, 359. The Government "does not object to Graham cross-examining R.M. about the nature of her relationship with Mitchell-Rodgers or his possession of a firearm during the shooting." ECF No. 71 at PageID.392. The only issues remaining, therefore, are whether Graham may cross-examine R.M. about her knowledge of Mitchell-Rodgers's prior felony conviction and the previously dismissed state charges. Each issue will be addressed in turn.

## A. Prior Felony Conviction

Graham argues that he must be able to cross-examine R.M. about her knowledge of Mitchell-Rodgers's prior felony conviction, because such questioning would expose R.M.'s bias. ECF No. 66 at PageID.359. Specifically, Graham says that R.M., as Mitchell-Rodgers's girlfriend, "has a clear motive to protect [Mitchell-Rodgers] from future criminal liability[1] and to shift blame entirely onto Mr. Graham." ECF No. 66 at PageID.356.

However, R.M. thus far has *not* shifted the blame entirely onto Graham. On the contrary, she has consistently implicated both Mitchell-Rodgers and Graham in the May 2023 shooting, stating that they both fired shots. ECF No. 71-2 at PageID.402. In this way, R.M. has not yet demonstrated any instinct or willingness to shield Mitchell-Rodgers from the potential criminal consequences of his own role in the May 2023 shooting. Rather, R.M. has done the exact opposite—she has implicated Mitchell-Rodgers in the crime of being a felon in possession of a firearm. If R.M. truly was protecting Mitchell-Rodgers from criminal liability, she would not have stated that Mitchell-Rodgers possessed a gun and shot back. For this reason, Graham's argument about needing to expose R.M.'s desire to "shift blame" falls flat,

---

[1] Because Mitchell-Rodgers was—like Graham—a convicted felon at the time of the shooting on May 25, 2023, Mitchell-Rodgers could also be subject to federal prosecution for felon in possession of a firearm or ammunition under 18 U.S.C. § 922(g)(1).

and R.M.'s knowledge of Mitchell-Rodgers's prior felony conviction has minimal, if any, probative value. Moreover, any probative value is substantially outweighed by the danger of unfair prejudice posed by admitting this evidence, as it may mislead the jury into considering whether Mitchell-Rodgers should have also been prosecuted, or act as improper character evidence.

That said, this calculus may change should R.M.'s testimony stray from her prior statements that Mitchell-Rodgers possessed a gun and fired shots during the incident. If that happens, then Graham may cross-examine her knowledge of Mitchell-Rodgers's prior felony conviction, and her potential bias or motive to change her story to protect Mitchell-Rodgers.

## B. Dismissed State Charges

For many of the same reasons, Graham may not cross-examine R.M. about the previously dismissed state charges against Mitchell-Rodgers. That Mitchell-Rodgers was once charged in connection with the May 23 shooting is likewise irrelevant to establishing that R.M. is biased in favor of Mitchell-Rodgers and against Graham. Indeed, Graham does not explain why R.M.'s knowledge of those state charges, which were dismissed, would provide an incentive for her to lie about who shot her.

Moreover, even if that line of questioning had any probative value, such value would be substantially outweighed by the danger of unfair prejudice. Indeed,

questioning R.M. about Mitchell-Rodgers's dismissed state charges would encourage the jury to question why Mitchell-Rodgers was charged in the state, why his charges were dismissed, and why he was not on trial with Graham. All of these matters are improper for the jury to consider, especially in light of the Sixth Circuit Pattern Jury Instructions, which twice caution jurors not to consider the guilt of an uncharged party:

> Also keep in mind that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proved this defendant guilty. Do not let the possible guilt of others influence your decision in any way.

Sixth Circuit Pattern Jury Instruction 2.01, 8.08 (2025). Accordingly, Graham may not refer to or cross-examine R.M. about the previously dismissed state charges against Mitchell-Rodgers.

## IV. CONCLUSION

In sum, Graham may cross-examine R.M. about her romantic relationship with Mitchell-Rodgers and her knowledge of Mitchell-Rodgers's possession of a firearm during the incident. Graham may not cross-examine R.M. about her knowledge of Mitchell-Rodgers's prior felony conviction unless R.M. testifies in a manner that contradicts her prior statements that Mitchell-Rodgers possessed and fired a gun on the date of the incident. Only then will such a line of questioning be

permitted. Finally, regardless of R.M.'s testimony, Graham may not reference the previously dismissed state charges against Mitchell-Rodgers.

Accordingly, it is **ORDERED** that Graham's motion *in limine* regarding witness bias, ECF No. 66, is **DENIED WITHOUT PREJUDICE**.


*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: June 23, 2025